

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ERIK RASHEED MCCOY,**

　　　　　**Plaintiff,**

　　v.　　　　　　　　　　　　　　　　　　　**ACTION NO. 2:09cv412**

**JEFFERY FRAZIER,**
**Superintendent,**
**TED HULL,**
**Major, and**
**MS. L. SUDDUTH,**
**Captain,**

　　　　　**Defendants.**

### DISMISSAL ORDER

Plaintiff, a Virginia inmate, brings this pro se action pursuant to 42 U.S.C. § 1983 to redress alleged violations of his constitutional rights. Specifically, Plaintiff claims that Muslim inmates at Northern Neck Regional Jail ("NNRJ") are not allowed to pray in Arabic during Jumuah[1] services. Plaintiff seeks $1,500,000.00 and injunctive relief.

### I. Procedural History

After Plaintiff qualified to proceed *in forma pauperis*, Defendants filed a motion for summary judgment and a memorandum and affidavits in support thereof.

In accordance with Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), Plaintiff was given an opportunity to respond to Defendants' motion with any material that he wished to offer

---

[1]The Court notes that there are alternative spellings for the Friday prayers known, among other names, as Jumu'ah, Jum'ah, Jumah, Jumma, Jummah, and Jumuah. The documents submitted by Defendants alternately use Jumma and Jumah. The Court adopts the spelling in Plaintiff's Complaint ---Jumuah.

in rebuttal.  Plaintiff was advised that failure to submit any materials could result in an adverse

judgment based on Defendants' motion and accompanying affidavits.  Plaintiff filed a response

to Defendants' motion.  Accordingly, this matter is ripe for judicial determination.

## II. Facts

Plaintiff claims that on June 26, 2009, a non-defendant officer ended Jumuah prayer

services because the prayers were being said in Arabic.  NNRJ has a policy that allows Muslim

inmates from different housing units and security levels to congregate together for Jumuah prayer

services.[2]  However, because the inmates are of different housing units and security levels, they

must be supervised and they may not speak Arabic during the Jumuah service.  NNRJ does not

have any officers that speak Arabic, and NNRJ has been unable to find a volunteer to conduct

Jumuah prayer services.  NNRJ's policy requiring Jumuah prayers to be in English stems from

the concern that inmates could plot riots, escapes, or espouse extremism, and officers would be

unable to understand what was being said.  This policy only applies when inmates from different

housing units and of different security levels are together.  In their housing units, inmates may

gather to worship and pray in Arabic.

Plaintiff claims that a memorandum from Defendant Hull stated that Muslims could only

celebrate one of the two Muslim holidays.  The memorandum states that NNRJ will continue to

observe Ramadan and Eid al-Fitr.  The memorandum does not mention any other holiday, or

suggest that any other holiday will not be observed.

---

[2]Defendants indicate that the privilege of allowing inmates from different housing units and security levels to gather for religious services is unprecedented.

<u>III. Analysis</u>

**A. Summary Judgment Standard**

Summary judgment is appropriate only when a court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24 (1986); <u>Seabulk Offshore, Ltd. v. Am. Home Assurance Co.</u>, 377 F.3d 408, 418 (4th Cir. 2004). The moving party has the initial burden to show the absence of an essential element of the nonmoving party's case and to demonstrate that the moving party is entitled to judgment as a matter of law. <u>Honor v. Booz-Allen & Hamilton, Inc.</u>, 383 F.3d 180, 185 (4th Cir. 2004); <u>McLean v. Patten Cmtys., Inc.</u>, 332 F.3d 714, 718 (4th Cir. 2003); <u>see</u> <u>Celotex Corp.</u>, 477 U.S. at 322-25. When the moving party has met its burden to show that the evidence is insufficient to support the nonmoving party's case, the burden then shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Honor</u>, 383 F.3d at 185; <u>McLean</u>, 332 F.3d at 718-19. Such facts must be presented in the form of exhibits and sworn affidavits. <u>Celotex Corp.</u>, 477 U.S. at 324; <u>see also</u> <u>M&M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.</u>, 981 F.2d 160, 163 (4th Cir. 1993). Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.

3

Although a court must draw all justifiable inferences in favor of the nonmoving party, in order to successfully defeat a motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation," the "building of one inference upon another," the "mere existence of a scintilla of evidence," or the appearance of "some metaphysical doubt" concerning a material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc., 330 F. Supp. 2d 668, 671 (E.D. Va. 2004). Rather, the evidence must be such that the fact-finder reasonably could find for the nonmoving party. See Anderson, 477 U.S. at 252.

**B. First Amendment**

Section 1983 emerged as the appropriate cause of action to challenge unconstitutional actions of state officials by virtue of the Supreme Court's ruling in Monroe v. Pape, 365 U.S. 167 (1961). The Court extended this remedy to prisoners in Cooper v. Pate, 378 U.S. 546 (1964), and Houghton v. Shafer, 392 U.S. 639 (1968). A court's analysis of any § 1983 claim "begins by identifying the specific constitutional right[s] allegedly infringed by the challenged" actions. Graham v. Connor, 490 U.S. 386, 394 (1989). Plaintiff's claims arise under the Free Exercise Clause of the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend I.

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). "Inmates clearly retain protections afforded by the First Amendment including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). In order to state a claim under the Free Exercise Clause, a plaintiff must make a threshold showing that his beliefs are both sincere and religious in nature. Id. In this case, there is no evidence undermining the sincerity of Plaintiff's beliefs at this point in the proceedings.

In addition, a plaintiff must demonstrate that his right to free exercise of religion has been "substantially burdened." Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A substantial burden is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981). Once a plaintiff has satisfied the threshold showing, the Court must then examine whether the regulation is "reasonably related to legitimate penological interests." O'Lone, 482 U.S. at 349 (quoting Turner, 482 U.S. at 89). If so, the regulation is valid. Id.

In Turner v. Safley, the Supreme Court set forth the following four (4) factors a court should consider in determining whether a reasonable relationship exists between a regulation and the governmental interest: (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests. 482 U.S. at 89-90; see Lovelace v. Lee, 472 F.3d 174, 200 (4th Cir. 2006).

## C. Discussion

The policy that Plaintiff challenges — that when inmates from different housing units and of different security levels are together, they must be supervised and they may not speak in a language that the person who is supervising the gathering cannot understand — is based on security concerns. The policy is logically connected to valid security concerns. When inmates from different housing units and security levels are allowed to gather together, it is important that they not be allowed to surreptitiously plan anything that might present a security risk. Therefore, it is a reasonable policy that they be monitored. Tisdale v. Dobbs, 807 F.2d 734, 738 (8th Cir. 1986) (upholding district court's finding that "the threat of unsupervised group prayer meetings becoming forums for dissension and unrest" was supported by an historical occurrence of just such an event). If inmates are allowed to speak in a language that cannot be understood by the person monitoring them, the purpose of monitoring largely would be negated. Ware v. Lasumba, No. 04cv925, 2008 U.S. Dist. LEXIS 30336 at *10-11 (S.D. Ill. Mar. 31, 2008) (finding security concern, that inmates speaking in a language that officers cannot understand, to be a legitimate concern).

The policy is limited  to only those instances when inmates from different housing units and custody levels are gathered together.  Such gatherings present a wholly different security risk than gatherings of inmates from one housing unit or security level. Henny v. Harvey, No. 7:08cv399, 2009 U.S. Dist. LEXIS 25977 at *25-26 (W.D. Va. Mar. 27, 2009) (finding that limiting inmates to prayer in their pods was reasonable, because group meetings of inmates from different units could present security risks).  Inmates from different housing units and custody levels could conceivably plan an institution-wide action, such as a riot.  While a riot can certainly

6

be planned in a given housing unit, a riot contained to a single housing unit would not present as much danger as an institution-wide riot. This is a reasonable restriction, particularly considering NNRJ's efforts to accommodate prisoners' desire to gather with others of their faith. For example, Muslim inmates are allowed the unprecedented privilege of gathering together from different housing units and security levels. The only restrictions are that these gatherings be monitored and that inmates not speak Arabic.

In an effort to further accommodate the prisoners' requests, Defendants have attempted to find a volunteer who speaks Arabic to lead the Jumuah prayers. However, they have not been successful in finding such a volunteer. Plaintiff asserts that they could try harder to find a volunteer. However, it is clear that Defendants have tried to find a way to accommodate the religious needs of Plaintiff and other Muslims. The policy is designed to protect the security of the institution, while providing Plaintiff with at least two ways of exercising his religion with respect to Jumuah prayers--- in group Jumuah services in English or Jumuah services in Arabic in Plaintiff's housing unit.    The policy also allows inmates an alternative method of practicing their religion. Muslim inmates in a given housing unit may gather <u>within</u> their housing unit for Jumuah services and pray in Arabic. The policy is narrowly tailored to alleviate the worst security concerns, while still allowing inmates to pray in Arabic when they are in their own housing unit. Therefore, Plaintiff's free exercise of his First Amendment rights has not been substantially burdened.

Plaintiff also objects to having to sign up to attend services. Plaintiff may be attempting to assert an equal protection claim. However, in a response to a request form filed by Plaintiff, Defendant Hull explains that all inmates must sign up for services so that he knows who wants to

7

attend services. Such a requirement is reasonable because security, staffing, and location decisions must be made based on the number and identity of those signing up. Plaintiff is incarcerated, and institutional staff must also keep track of the movement of prisoners.

In his Complaint, Plaintiff claims that a memorandum from Defendant Hull stated that Muslims could only celebrate one of the two Muslim holidays. Plaintiff provided no other information regarding this claim. The memorandum states that NNRJ will continue to observe Ramadan and Eid al-Fitr. In his response to Defendants' motion for summary judgment, Plaintiff states only that "it was only until 2009 that N.N.R.J. afforded Muslims the opportunity to observe Eid al-Adhr." Resp. at 3. However, the memorandum makes no mention of Eid al-Adhr being discontinued. Moreover, Plaintiff filed his Complaint on August 18, 2009. In 2009, Eid al-Adhr was not celebrated until November 27, 2009. Based solely on the one sentence in his Complaint and the one sentence in his response, the Court cannot find that Plaintiff has stated a claim for a violation of his right to freely practice his religion. For example, there is no indication whether Muslims are required to observe Eid al-Adhr. It is not even clear in the Complaint that Plaintiff is complaining that Muslims at NNRJ are not allowed to observe Eid al-Adhr. Moreover, neither Plaintiff's Complaint nor his response makes it clear that Plaintiff was actually ever prevented from observing Eid al-Adhr.

## IV. Conclusion

For the aforementioned reasons, the Court **GRANTS** Defendants' motion for summary judgment.

Plaintiff is advised that he may appeal from this Dismissal Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600

Granby Street, Norfolk, Virginia 23510.  Said written notice must be received by the Clerk within thirty (30) days from the date of this Dismissal Order.

If Plaintiff wishes to proceed *in forma pauperis* on appeal, the application to proceed *in forma pauperis* is to be submitted to the Clerk, United States Court of Appeals, Fourth Circuit, 1100 E. Main Street, Richmond, Virginia 23219.

The Clerk is **DIRECTED** to send a copy of this Dismissal Order to Plaintiff and counsel for Defendants.

IT IS SO **ORDERED**.

/s/

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

July 2, 2010

9